SELAH CHAMBERLAIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ELLEN STEELE CHAMBERLAIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 16597, 16598, 24284, 24285, 29479, 29480.

Promulgated February 28, 1930.

*Erwin E. Richter, Esq.,* and *Francis P. Farquhar, C. P. A.,* for the petitioners.

*James L. Backstrom, Esq.,* and *P. A. Sebastian, Esq.,* for the respondent.

OPINION.

MARQUETTE: These proceedings present the following questions for our consideration, namely:

1. Did the agreements which the petitioners signed in 1915 purporting to make Joseph Chamberlain a trustee of the petitioners' securities, actually create such trusts?

2. Did the agreement of May, 1920, jointly executed by these petitioners and purporting to make Joseph Chamberlain a trustee of specified securities owned by the petitioners actually create such a trust within the meaning of section 219 of the Revenue Act of 1921?

**132**

3. If so, were there included in such trust stocks not specified in the agreement, but which were later reissued in the name of "Joseph Chamberlain, Trustee"?

Regarding the first question, it is the generally accepted rule that one of the essential elements in the creation of a valid trust is the consent of the proposed trustee to act as such. 26 Ruling Case Law, pp. 1191, 1192; 1 Perry on Trusts, sec. 259. In the present instance there was no such consent by the proposed trustee, nor was anything done toward carrying out the provisions of the 1915 agreements. The securities mentioned therein were handled by the petitioners and their brother in exactly the same fashion after, as they had been before, the agreements were signed. In our opinion these facts are not consonant with a valid trust and we must conclude that none was created by the petitioners in 1915.

As to the agreement of May, 1920, it appears that the proposed trustee accepted the trust. It also appears that the trustee exercised no more authority over the securities than he had exercised before the agreement was executed; that Selah Chamberlain, one of the grantors and one of the *cestuis*. of the trust, continued to consult with and advise the trustee as to the management of the trust property, not only in his own behalf, but also as attorney in fact for his sister Ellen, the other grantor and *cestui* of the trust; and that the sole purpose of the petitioners in executing that agreement was to avoid the cumbersome necessity of furnishing to their brother Joseph special powers of attorney whenever any stock was to be sold.

The respondent contends that under section 219 of the Revenue Act of 1921 a beneficiary of a trust is not entitled to a deduction for losses sustained in the sale of capital assets of a trust. Section 219 provides:

SEC. 219. (a) That the tax imposed by sections 210 and 211 shall apply to the income of estates or of any kind of property held in trust, including—

(1) Income received by estates of deceased persons during the period of administration or settlement of the estate;

(2) Income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests;

(3) Income held for future distribution under the terms of the will or trust; and

(4) Income which is to be distributed to the beneficiaries periodically, whether or not at regular intervals, and the income collected by a guardian of an infant to be held or distributed as the court may direct.

\*    \*    \*    \*    \*    \*    \*

The respondent, in support of his contention, relies upon the case of *Baltzell* v. *Mitchell*, 3 Fed. (2d) 428, and upon the decisions in *Mary P. Eno Steffanson*, 1 B. T. A. 979; *Lloyd D. Newman*, 15 B. T. A. 369; *Richard Sharpe*, 17 B. T. A. 135, and *Clarence M.*

*Busch et al.*, 17 B. T. A. 592. But in none of these cases does it appear that a revocable trust was involved; in the present proceedings we are dealing with an instrument revocable at the will of the grantors. Further, there was no complete identification of settlor and beneficiary in the cases above cited; in the present proceedings the settlors are the sole beneficiaries under the instrument. These differences in the facts definitely detract from and diminish the authority of those cases as precedents for guidance in the present instance.

In the case of *Stoddard* v. *Eaton*, 22 Fed. (2d) 184, we find the controlling facts very similar to those now before us. There, as here, the instrument was in form a complete conveyance in trust, and revocable at the will of the grantor; there, as here, the grantor had no intention of dispossessing himself of the ownership and dominion of his securities, and this was the common understanding of himself and his trustee; there, as here, there was no intent or purpose of establishing a genuine trust transaction, but the sole aim was to enable an agent to deal readily with securities in the grantor's absence, and for his benefit; there, as here, the trustee did not exercise full power or discretion over the securities, but he acted at the direction or with the advice and consent of the grantor, who was also a beneficiary; there, as here, the proceeds of sales of securities were sometimes paid directly to the grantor— *cestui*, and at others they were paid to the trustee. In Stoddard's case the annual income from the securities conveyed in trust was to be paid, $3,000 to his wife and the balance to himself; in these proceedings the income is all to be paid to the grantors. Stoddard retained control of the securities held by the trustees, though just how he retained it is not stated but left to inference, and directed the sales of securities and the investment of funds; the present petitioners had access to the safe-deposit box where the securities were kept, one of the petitioners kept all the accounts relative to the securities, and on at least one occasion he acted directly and without the intervention of the trustee in disposing of some of the securities. And throughout the years following the 1920 agreement the petitioners and their brother, the trustee, followed exactly the same course in the management of their securities as that pursued for fourteen years prior to 1920, except that the task of transferring shares of stock was simplified by the agreement.

It was urged in the *Stoddard* case that the so-called trust agreements did not in fact work a severance of the trusteed securities from the corpus of the grantor's property; that those securities always remained assets of the grantor, and that losses sustained on their sale were properly deductible from his gross income. The

**134**

plaintiff further contended that the surrounding conditions, namely, the motivation, the reactions of the parties to the situation thus brought about, all have a significance which must be evaluated before the true relation of the transactions to the taxing act may be ascertained. This general statement meets our approval and is definitely in point in the present proceedings.

In reaching its conclusion that no real trust had been created in *Stoddard* v. *Eaton, supra,* the court said:

After all, the word "trust" as used in section 219 of the Revenue Act of 1918 (Comp. St. § 6336–1/8 ii), can hardly have been intended to comprehend every instance in which a trust is recognized in equity. A trust ex maleficio, a resulting trust, or a constructive trust are examples of trusts which do not fit into the frame of the statute. A trust, as therein understood, is not only an express trust, but a genuine trust transaction. A revenue statute does not address itself to fictions.

The policy of the law is now more clearly expressed in the language of the acts of 1924 and 1926, which provide (43 Stat. 275, and 44 Stat. 275, and 44 Stat. 32 [26 USCA § 960, subd. (g)] that, where a grantor of a trust reserves the power to revest himself with the title to any of the corpus of the trust, then the income of such part is the income of the grantor.

While the Act of 1924 is not applicable to the case at bar in the sense that the statute is not retroactive, nevertheless the action of Congress under the circumstances may well be regarded as a clarification of an originally obscure expression of legislative intent.

The strong similarity of facts in the *Stoddard* case and in the one before us, running, as they do, almost parallel, make the language above quoted especially applicable to these proceedings.

In the light of all the surrounding circumstances we are unable to agree with the respondent in his view of the question. It is our opinion that, following the decision in *Stoddard* v. *Eaton, supra,* the sales of securities during the years 1921, 1922, and 1923, were not sales of trust property under section 219 of the Revenue Act of 1921, and that the losses resulting from those sales were sustained by the petitioners and are properly deductible by them, respectively, from their gross incomes for the years involved. This conclusion renders unnecessary any consideration of the third question mentioned in the beginning of this opinion.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*